Michael J. Nader, SBN 200425
michael.nader@ogletree.com
George J. Theofanis SBN 324037
george.theofanis@ogletree.com
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA  95814
Telephone:  916-840-3150
Facsimile:   916-840-3159

Attorneys for Defendant
W.W. GRAINGER, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| DEREK SANCHEZ, individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>W.W. GRAINGER, INC., and DOES 1 through 50, inclusive,<br><br>      Defendant. | Case No.<br><br>**DEFENDANT W.W. GRAINGER, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties; Corporate Disclosure Statement; Declarations of George J. Theofanis, Aishwarya Kanthappan, Paul Stanikunas, Sam Orelove, and James Griffin]<br><br>Ventura County Superior Court Case No. 2025CUOE056901<br><br>Action Filed:    December 29, 2025<br>Trial Date:      TBD |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant W.W. Grainger, Inc. ("Defendant"), through undersigned counsel, hereby removes the above-captioned action from the Superior Court of the State of California for the County of Ventura to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

## I.    PROCEDURAL BACKGROUND AND TIMELINESS OF REMOVAL

1.    On December 29, 2025, Plaintiff filed an unverified Class Action Complaint in the Superior Court of the State of California, County of Ventura, commencing the action entitled "*Derek Sanchez* v. *W.W. Grainger, Inc.*, Case No.: C25-02397 ("Complaint"). (Declaration of George J. Theofanis ("Theofanis Decl."), ¶2, Ex. A). The Plaintiff's Complaint asserts individual and class claims for: (1) Failure to Pay Minimum and Overtime Wages (Lab. Code §§ 510, 1194, 1194.2, 1197, and 1198; IWC Wage Order §§ 3, 4, and 5); (2) Failure to Provide Meal Periods (Lab. Code §§ 226.7 and 512; IWC Wage Order § 11); (3) Failure to Permit Rest Periods (Lab. Code § 226.7; IWC Wage Order § 12); (4) Failure to Provide Accurate Itemized Wage Statements (Lab. Code § 226); (5) Failure to Pay All Wages Due During Employment and Upon Separation of Employment (Lab. Code §§ 201, 202, 203, 204, and 210); (6) Warehouse Quota Violations (Lab. Code §§ 2101, 2102, 2103, and 2104); and (7) Unfair and Unlawful Business Practices (Bus. & Prof. Code §§ 17200, et seq.). (*Id.* at ¶3).

2.    Defendant's registered agent for service of process was served with the Complaint on January 16, 2025. (Theofanis Decl. ¶4 Ex. B). On February 17, 2026, Defendant timely filed an answer to Plaintiff's Complaint. (Theofanis Decl. ¶5 Ex. C). C).

3.    Traditionally, a defendant in a civil action has thirty days from the date

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

it is validly served with a summons and complaint to remove the action to federal court. 28 U.S.C. § 1446(b); *Murphy Bros v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

4.     However, the time to remove under 28 U.S.C. § 1446(b) does not begin to run until receipt by the defendants, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.,* 425 F.3d 689, 694 (9th Cir. 2005). The Ninth Circuit has repeatedly upheld the *Harris* decision in subsequent cases. In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit emphasized that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" as to removability. In *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013), the Court explained that when defendants *do* conduct such an investigation, 28 U.S.C. §§ 1441 and 1446, "read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information."

5.     As drafted, the Complaint does not provide readily ascertainable grounds for removal under Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). and Defendant has not received any other pleadings, motions, orders, or other papers from Plaintiff, from which removability could be ascertained. (Theofanis Decl. ¶6). Any argument that Defendant could have removed the case earlier based on information contained within its own records fails. As such, the deadline to remove this action from the federal court under CAFA has not yet begun and this Notice of Removal is timely filed.

## II.     PLAINTIFF'S COMPLAINT IS REMOVABLE PURSUANT TO CAFA

6.     As set forth below, Plaintiff's claims as alleged in the Complaint are removable under CAFA.

7.     Under CAFA, the Federal District Court has jurisdiction if:

    a.     There are at least 100 class members in all proposed plaintiff

classes; and

b.      The combined claims of all class members exceed $5 million exclusive of interest and costs; and

c.      Any class member (named or not) is a citizen of a different state than any defendant.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

### A.      There Are At Least 100 Class Members in the Proposed Class

8.      Plaintiff purports to bring this action on behalf of the following class: "All individuals currently or formerly employed by Defendants as non-exempt or hourly-paid employees in the State of California at any time between November 23, 2023 and the date of class certification ("Class")." (Comp. ¶19).

9.      Plaintiff alleges that "[t]he Class Members are so numerous that joinder of all members is impractical." (Comp. ¶23(a)). Plaintiff further alleges "[a]lthough the members of the Class are unknown to Plaintiff at this time, on information and belief, the Class is estimated to be greater than 500 individuals." (*Id.*).

10.      Based on a review of Defendant's business records, 1,610 individuals were employed as hourly employees within the State of California (collectively referred to as the **"putative class members"** or **"PCMs"**) at some time during the period from November 23, 2023 until January 2, 2026 (the "**Relevant Period**").[1] (Declaration of Aishwarya Kanthappan ("Kanthappan Decl.") ¶11).[2] With 1,610

---

[1] Defendant acknowledges that the relevant "statutory" period is from November 23, 2023 until present. Because of the need to review the data for this Notice of Removal by a date certain, Defendant has designated November 23, 2023 until January 2, 2026 as the "Relevant Period" for purposes of this Notice of Removal.

[2] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from Defendant and their counsel constitute sufficient evidence to establish the amount in controversy. *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set[…] forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N.D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, pay periods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

PCMs, the first requirement of CAFA jurisdiction is satisfied.

**B.    The Requisite $5 Million Amount in Controversy Is Satisfied**

11.    CAFA authorizes the removal of class-action cases in which the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

12.    To establish the amount in controversy, "the notice of removal must include only 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 700 (9th Cir. 2018) (*quoting Dart Cherokee Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014).

13.    So long as Defendant establishes that the amount-in-controversy could exceed the jurisdictional threshold under CAFA, the case is removable. *Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (defendant need only establish "that the potential damages could exceed" $5 million (emphasis added)). As established below, Defendant's notice of removal leaves no question that the amount in controversy could exceed $5 million and therefore, the case is removable under CAFA.[3]

**1.    Relevant Class Member Data.**

14.    Defendant's business records[4] covering the Relevant Period confirm that Defendant employed at least **1,610 PCMS** during the Relevant Period. (Kanthappan Decl. ¶11).

15.    During the Relevant Period, PCMs worked approximately **407,920 shifts** lasting at least 3.5 hours in length. (Kanthappan Decl. ¶12).

16.    During the Relevant Period, PCMs worked approximately **382,265**

controversy in excess of CAFA's jurisdictional threshold).

[3] In alleging the amount in controversy for purposes of CAFA removal, Defendant does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the operative Complaint. Nor does Defendant concede that any or all of the current or former employees are entitled to any recovery in this case, or are appropriately included in the putative class.

[4] Records that were reviewed by Aishwarya Kanthappan and referenced in her declaration were provided by Defendant through its counsel, as set forth in the Declarations of Sam Orelove and James Griffin.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

**shifts** lasting at least 5.01 hours in length. (Kanthappan Decl. ¶13).

17. During the Relevant Period, the PCMs earned an average of **$25.12 per hour.** (Kanthappan Decl. ¶14).

18. During the Relevant Period, putative class members collectively worked approximately 417,324 **shifts** in California. (Kanthappan Decl. ¶15).

19. During the Relevant Period, putative class members collectively worked approximately 97,989 **workweeks** in California. (Kanthappan Decl. ¶16).

20. Within the one-year statute of limitations, based on the December 29, 2025 filing date of the Complaint, 1,273 putative class members worked approximately **24,378 biweekly pay periods**. (Kanthappan Decl. ¶17).

21. During the Relevant Period, approximately **584 PCMs** separated employment from Defendant. (Kanthappan Decl. ¶18).

**2.    Calculating the Amount in Controversy for Removal**

    **(a)    Plaintiff's Unpaid Minimum Wage Claim Adds At Least $4,383,468.02 to the AIC.**

22. Plaintiff claims Defendant violated Labor Code sections 1194 and 1194.2, and the applicable Industrial Welfare Commission ("IWC") Wage Orders by failing to compensate him and the PCMs for all minimum wages for all hours worked. (Comp. ¶¶ 36, 38, 41-43, 45-46.)

23. Plaintiff alleges Defendant "engaged in a pattern of wage and hour violations under the California Labor Code and Industrial Welfare Commission ('IWC') Wage Orders . . . ." (Comp. ¶ 2.) Plaintiff further alleges Defendant maintained a "policy and practice of requiring Plaintiff and Class Members to undergo bag searches . . . [resulting in] off-the-clock and uncompensated [time]." (Comp. ¶ 25.) Plaintiff also alleges Defendant "regularly failed to pay all wages to Plaintiff and Class Members for all hours worked in violation of the Labor Code and the applicable IWC Wage Order." (Comp. ¶ 43.)

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

24.     California Labor Code section 1197 requires employers to pay their non-exempt employees an hourly wage that is at least the applicable minimum wage set by the Industrial Welfare Commission or by statute. Cal. Lab. Code § 1197.

25.     Here, Plaintiff's allegations of "off-the-clock" work support a 100% violation rate. *See, e.g.*, *Lopez v. First Student, Inc.*, 427 F. Supp. 3d 1230, 1236 (C.D. Cal. 2019) (unlimited allegations of systematic violations justify 100% violation rate assumption); *Vikram v. First Student Mgmt., LLC*, 2017 WL 4457575, at *4 (N.D. Cal. Oct. 6, 2017) (same); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (C.D. Cal. May 1, 2007) (same); *see also Amaya v. Consol. Container Co., LP*, 2015 WL 4574909, at *2 (C.D. Cal. July 28, 2015) (in the Ninth Circuit, courts generally find the amount in controversy satisfied where defendant assumes 100% violation rate based on allegations of uniform illegal practice and plaintiff offers no rebuttal evidence); *Mejia v. DHL Express* (USA), Inc., 2015 WL 2452755, at *4 (C.D. Cal May 21, 2015) ("[i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied.").

26.     Plaintiff's allegations also support the assumption that the putative class members experienced at least five hours of unpaid (off-the-clock) wages at their straight-time rate for every five shifts worked. *See, e.g.*, *Mendoza v. OSI Indus. LLC*, No. EDCV 22-1202 JGB (SPx), 2022 WL 4291327, at *4-5 (C.D. Cal. Sept. 16, 2022) (accepting as reasonable defendant's assumption of five unpaid minimum wage hours per week per putative class member).

27.     Even though Plaintiff's allegations support the assumption that putative class members experienced at least five hours of unpaid (off-the-clock) wages at their straight-time rate for every five shifts worked, Defendant conservatively estimated that each putative class member is entitled to only one hour of unpaid wages for every five shifts worked at each PCM's average hourly rate. Under this conservative estimate, the

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

amount of unpaid wages in controversy during the Relevant Period is at least approximately **$2,191,734.01**. (Kanthappan Decl. ¶19.)

28.    Under California Labor Code section 1194.2, an employee who receives less than the minimum wage can recover liquidated damages in the amount of the unpaid minimum wage plus interest. Actions to recover such damages are subject to the same statute of limitations as the action for wages from which the liquidated damages arise. Cal. Lab. Code § 1194.2(a).

29.    Pursuant to Labor Code section 1194.2, Plaintiff's claim also seeks to recover "liquidated damages" in amounts equal to the amounts of unpaid minimum wages for Plaintiff and the PCMs. (Compl. ¶ 46.) Therefore, the amount of unpaid minimum wages is multiplied by two to include liquidated damages in calculating the amount in controversy ($2,191,734.01 × 2 = $4,383,468.02). (Kanthappan Decl. ¶19.)

30.    In sum, Defendant estimates Plaintiff is claiming at least **$4,383,468.02** in unpaid (off-the-clock) wages and liquidated damages for purposes of calculating the amount in controversy. (*Id.*)

**(b)    Plaintiff's Failure to Provide Meal Period Claim Adds At Least $2,019,382.60 to the AIC.**

31.    Plaintiff claims that Defendant violated Labor Code sections 226.7 and 512, and the applicable Industrial Welfare Commission ("IWC") Wage Orders by failing to provide Plaintiff and putative class members meal breaks and premium compensation in lieu thereof. (Comp. ¶¶ 47-55.)

32.    Plaintiff alleges Defendant "established quotas that did not allow compliance with meal and rest periods or occupational health and safety laws . . . ." (Comp. ¶ 30.) Plaintiff alleges Defendant's "productivity quotas did not allow Plaintiff to comply with meal and rest period requirements." (Comp. ¶ 32.) Plaintiff further alleges Defendant "required Plaintiff and Class Members to meet quotas that prevented compliance with meal and rest periods and use of bathroom facilities . . . ." (Comp. ¶ 83.)

33.    Here, Plaintiff's allegations support a 100% violation rate. A 100%

8

violation rate is proper when the plaintiff's complaint alleges that the defendant always engages in labor violations. *See Feltzs v. Cox Communs. Cal., LLC,* No. SACV192002, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate); *Giannini v. Nw. Mut. Life Ins. Co.,* No. C 12-77 CW, 2012 WL 1535196, at *3 (N.D. Cal. 2012) (applying 100% violation rate based on allegations that defendant "routinely" failed to provide meal periods); *Stevenson v. Dollar Tree Stores, Inc.*, No. 2:10-cv-03052-KJM-EFB, 2011 WL 4928753, at *3-4 (E.D. Cal. 2011) (finding defendant's calculation of potential missed meal period damages at 100% of the shifts was appropriate where plaintiff alleged that class members were routinely denied meal periods or were not compensated for meal periods); *Franke v. Anderson Merchandisers LLC,* No. CV 17-4613-GW(SSx), 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language— and where the plaintiff offers no evidence rebutting this violation rate.").

34.     Even though Defendant could have relied on a 100% violation rate, it conservatively applied a 20% violation rate during the Relevant Period—meaning for every five shifts that Plaintiff and the PCMs worked more than five hours, Defendant assumed one meal break violation. Courts recognize such allegations warrant, at the very least, a 20% violation rate (i.e., one meal period violation per week) for putative class members. *See Mendoza v. Savage Servs. Corp.,* No. 19-CV-00122-RGK-MAA, 2019 WL 1260629, at *4-5 (C.D. Cal. Mar. 19, 2019) (recognizing that where a complaint alleges a policy or practice of missed meal and rest periods but does not specify frequency, courts in the district routinely accept a conservative 20% violation rate for amount-in-controversy calculations); *Oda v. Gucci Am., Inc.*, No. 2:14-cv-07469-SVW(JPRx), 2015 WL 93335, at *12-13 (C.D. Cal. Jan. 7, 2015) (holding that where the complaint alleges routine or "not always" provision of breaks and asserts a common policy or practice, it is reasonable for a removing defendant to assume

9

recurring missed-break violations when estimating the amount in controversy). Using a conservative one-in-five eligible shift rate (20%) or one premium per workweek is regularly endorsed for CAFA calculations when "routine" or "regular" violations are pled. *See Bridges v. Dealers' Choice Truckaway Sys., Inc.,* No. 2:20-cv-01620-ODW(SKx), 2020 WL 4937505, at *9 (C.D. Cal. Aug. 24, 2020) (finding 50% is a reasonable violation rate to use for CAFA removal); *Figueroa v. Multi-Color Corp.*, No. 24-CV-02208-DMR, 2024 WL 3101013, at *4 (N.D. Cal. June 24, 2024) (20% violation rate for meal and rest break claims was reasonable for CAFA removal purposes where the complaint alleged a policy and practice of violations but did not specify frequency); *Chavez v. Pratt (Robert Mann Packaging)*, LLC, No. 19-cv-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (20% violation rate was reasonable for calculating the amount in controversy under CAFA when the complaint alleged a pattern or practice of meal and rest break violations without specifying frequency); *Salatino v. Am. Airlines, Inc.,* 719 F. Supp. 3d 1094, 1103 (N.D. Cal. 2024) (10% to 20% violation rate was reasonable for meal and rest break claims under CAFA where the complaint alleged violations occurred "from time to time" as part of a broader policy or practice); *Elizarraz v. United Rentals,* Inc., No. 2:18-CV-09533-ODW(JC), 2019 WL 1553664, at *4 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate for a meal period claim and 25% violation rate for a rest period claim to be reasonable because of "pattern and practice" allegations).

35.  Applying a conservative premium estimate to Defendant's California non-exempt shift counts and average hourly rates yields a total amount of **$2,019,382.60** in controversy for meal premiums alone. (Kanthappan Decl. ¶20).

### (c) Plaintiff's Failure to Permit Rest Period Claim Adds at Least $2,145,558.44 to the AIC

36.  Plaintiff claims that Defendant violated Labor Code sections 226.7 and 512, and the applicable IWC Wage Orders by failing to provide rest breaks and premium compensation in lieu thereof. (Comp. ¶¶ 56-62).

37.  Plaintiff alleges Defendant "established quotas that did not allow

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

compliance with meal and rest periods or occupational health and safety laws . . . ." (Comp. ¶ 30.) Plaintiff alleges Defendant's "productivity quotas did not allow Plaintiff to comply with meal and rest period requirements." (Comp. ¶ 32.) Plaintiff alleges "[d]uring the relevant time period, Plaintiff and Class Members did not receive a 10-minute rest period for every 4 hours or major fraction thereof worked because they were required to work through their rest periods and/or were not authorized to take their rest periods." (Comp. ¶ 59). Plaintiff further alleges Defendant "required Plaintiff and Class Members to meet quotas that prevented compliance with meal and rest periods and use of bathroom facilities . . . ." (Comp. ¶ 83).

38.     Courts in this District have held that on-duty rest period allegations can justify a 100% violation rate; even more conservative benchmarks accept at least one missed rest period per workweek or a 20% shift-based violation rate given allegations of "regular" and "consistent" violations. *See Bell v. CEVA Logistics U.S., Inc.*, No. 5:19-cv-00352-SVW-KK, 2019 WL 6357973, at *3 (C.D. Cal. July 15, 2019) (approving 100% rate for on-premises rest-break policy); *Herrera v. Signature Flight Support LLC*, No. 2:22-cv-03082-SSS (ARGx), 2022 WL 4225376, at *5-6 (C.D. Cal. Sept. 13, 2022) (concluding on-premises and device-tethering allegations supported 100% violation rate); *Alvarez v. Office Depot, Inc.*, No. 2:17-cv-07220-PSG (AFMx), 2017 WL 5952181, at *5-6 (C.D. Cal. Nov. 30, 2017) (approving 60% violation rate for meal and rest period claims alleging uniform, unlawful practice); *Elizarraz v. United Rentals, Inc.*, No. 2:18-cv-09533-ODW (JC), 2019 WL 1553664, at *6-7 (C.D. Cal. Apr. 9, 2019) (approving 50% meal rate and 25% rest-break rate based on "pattern and practice" allegations); *Wheatley v. MasterBrand Cabinets, LLC*, No. EDCV 18-2127 JGB (SPx), 2019 WL 688209, at *6-7 (C.D. Cal. Feb. 19, 2019) (finding three missed rest breaks per week reasonable based on policies requiring work through breaks).

39.     Even though Defendant could have relied on a 100% violation rate, it conservatively applied a 20% violation rate during the Relevant Period-meaning for

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

every five shifts that Plaintiff worked more than three and a half hours, Defendant assumed one rest break violation. Courts recognize such allegations warrant, at the very least, a 20% violation rate (i.e., one rest period violation per week) for putative class members.

40.    Applying a conservative premium estimate to Defendant's California non-exempt shift counts and average hourly rates yields a total amount of **$2,145,558.44** in controversy for rest period premiums alone. (Kanthappan Decl. ¶21).

**(d)    Plaintiff's Wage Statement Penalty Claim (Violation of Labor Code section 226) Adds at Least $2,374,150 to the AIC.**

41.    Plaintiff's Fourth Cause of Action seeks wage statement penalties for Defendant's alleged failure to provide accurate wage statements to Plaintiff and the Putative Class Members as required by California Labor Code section 226 *et seq*. (Comp. ¶¶ 63–68.)

42.    Plaintiff alleges that Defendant "knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members," with "[t]he deficiencies includ[ing], among other things, the failure to correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiff and Class Members." (Comp. ¶ 65.) These derivative allegations arise from Plaintiff's underlying wage and hour claims.

43.    With respect to minimum and overtime wages, Plaintiff alleges that Defendant maintained a "policy and practice" of failing to pay all wages owed to Plaintiff and the Putative Class Members for all hours worked (Comp. ¶ 25), and that Defendant "regularly failed to pay all wages" to Plaintiff and Class Members for all hours worked (Comp. ¶ 43). Regarding meal periods, Plaintiff alleges that Defendant's quotas "did not allow" Plaintiff "to comply with meal" period requirements (Comp. ¶¶ 31–32), and that Defendant "required Plaintiff and Class Members to meet quotas that prevented compliance with meal and rest periods . . . ." (Comp. ¶ 83.) Plaintiff further

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

contends that employees' meal periods "were missed, late, short, interrupted, and/or they were not permitted to take a second meal period." (Comp. ¶ 52.) With respect to rest periods, Plaintiff alleges that Defendant's quotas "prevented compliance" with rest period requirements (Comp. ¶¶ 31–32, 83), and that employees "were required to work through their rest periods and/or were not authorized to take their rest periods." (Comp. ¶ 59.) As to sick leave pay, Plaintiff alleges that "Defendants' policies and practices violated California law" (Comp. ¶ 88), and that Defendant failed to pay "sick wages" to Plaintiff and Class Members "at the correct rate" (Comp. ¶ 91(a)).

44.    Plaintiff's claim for wage statement penalties is wholly derivative of his claims for unpaid minimum, overtime, and premium wages. As such, it puts at issue every wage statement for every pay period during the one-year statutory period from December 29, 2025 to the present. Courts have recognized that such allegations support a 100% pay-period violation rate for CAFA calculations within the one-year limitations period. *See Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 2146403, at *4 (C.D. Cal. May 9, 2018) (approving 100% violation rate for wage statement penalties where complaint alleged "consistent policy" of failing to provide meal and rest breaks, reasoning that wage statements would necessarily be inaccurate every pay period); *Wheatley,* 2019 WL 688209, at *6–7 (endorsing 100% violation rate where wage statement claim was derivative of uniform unpaid wage and break violations); *see, e.g., Bermejo v. Lab. Corp. of Am.*, No. 2:20-cv-06633-ODW (JEMx), 2020 WL 6392558, at *7 (C.D. Cal. Nov. 2, 2020) (100% violation rate reasonable where complaint alleges "practices and policies" of underpaying wages); *Altamirano v. Shaw Indus., Inc.,* No. C-13-0939 EMC, 2013 WL 2950600, at *11 (N.D. Cal. June 14, 2013) (reasonable to assume 100% violation rate where complaint alleged pervasive policies resulting in meal and rest break violations and off-the-clock work).

45.    Section 226(e) provides penalties for inaccurate wage statements as follows: the "greater of all actual damages or fifty dollars ($50) for the initial pay

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)[.]" Cal. Lab. Code § 226(e).

46.    Defendant's records indicate that 1,273 Putative Class Members received at least one wage statement during the period between December 29, 2024 and December 31, 2025. (Kanthappan Decl. ¶¶17, 22.) In total, Defendant issued approximately 24,378 wage statements to Putative Class Members during this time.

47.    Applying a $50 wage statement penalty to the first pay period at issue for all 1,273 Putative Class Members who received a wage statement during the applicable time period places $63,650 in controversy. (Kanthappan Decl. ¶22.)

48.    Applying a $100 wage statement penalty to the remaining 23,105 pay periods at issue for all 1,273 Putative Class Members who received a wage statement during the applicable time period, subject to a $4,000 cap per employee, places $2,310,500 in controversy. (Kanthappan Decl. ¶22.)

49.    Thus, Plaintiff's wage statement penalty allegations place a total of **$2,374,150** in controversy. (Kanthappan Decl. ¶22.)

(e)    **Plaintiff's Waiting Time Penalty Claim (Violation of Labor Code section 203) Adds at Least $3,159,604.64 to the AIC.**

50.    Plaintiff's Fifth Cause of Action seeks waiting time penalties in an amount equal to up to thirty days' wages for Plaintiff and the putative class members based on Defendant's alleged willful failure to pay all wages owed to employees at the time of separation or discharge. (Comp. ¶¶ 69–76.)

51.    Plaintiff alleges that "[d]uring the relevant time period, [Defendant] willfully failed to pay Plaintiff and [the putative class members] their earned wages upon termination, either at the time of discharge or within seventy-two (72) hours of their leaving [Defendant's] employ." (Comp. ¶ 74.) With respect to minimum and overtime wages, Plaintiff alleges that Defendant maintained a "policy and practice" of failing to pay all wages owed to Plaintiff and the putative class members for all hours

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

worked (Comp. ¶ 25), and that Defendant "regularly failed to pay all wages" to Plaintiff and the putative class members for all hours worked (Comp. ¶ 43). Regarding meal and rest periods, Plaintiff alleges that Defendant's quotas prevented compliance with these requirements, resulting in meal periods that were missed, late, short, or interrupted, and rest periods that employees were required to work through or were not authorized to take. (Comp. ¶¶ 31–32, 52, 59, 83.) As to sick leave pay, Plaintiff alleges that "Defendants' policies and practices violated California law" (Comp. ¶ 88), and that Defendant failed to pay "sick wages" to Plaintiff and the putative class members "at the correct rate." (Comp. ¶ 91(a).)

52.    Plaintiff's waiting time penalty claim is entirely derivative of the other wage claims asserted in the Complaint, including Defendant's alleged failure to pay minimum and overtime wages, as well as meal and rest break premium wages. The Complaint therefore alleges a consistent policy of failing to pay all wages upon termination or resignation. Where uniform wage violations are alleged, courts in this District accept use of the maximum thirty-day penalty for all separated employees within the Section 203 limitations period. *See La Grow v. JetBlue Airways Corp.*, No. 2:24-cv-00518-ODW (SKx), 2024 WL 3291589, at \*5 (C.D. Cal. July 3, 2024) (holding that a 100% assumed violation rate and use of the maximum thirty-day period for Section 203 waiting time penalties are reasonable when the complaint alleges uniform, "pattern and practice" wage-and-hour violations, including meal and rest break violations, because allegations of consistent, class-wide violations support the inference that each separated employee experienced at least one unpaid wage persisting through termination); *Barzi v. Equinox Holdings, Inc.*, No. 2:24-cv-04117-SPG-E, 2024 WL 4133020, at \*6 (C.D. Cal. Sept. 9, 2024) (explaining that where a complaint alleges company-wide policies causing minimum wage, overtime, and meal and rest period violations, a 100% violation rate for Section 203 penalties is a reasonable assumption because the defendant need only show it is more likely than not that each class member has at least one viable underlying wage claim alleged

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

uniformly across the class); *see also, e.g.*, *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-cv-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) (finding a 100% violation rate for unpaid wages reasonable where the complaint alleged a policy and practice of wage-and-hour violations, reasoning that if every putative class member incurred damages for at least one other claim, every class member who departed during the statutory period was due unpaid wages); *Lauryn Gist-Reed v. Alpha Analytical Laboratories, Inc.*, No. 2:24-CV-03282-DJC-CSK, 2025 WL 1572929, at *1 (E.D. Cal. June 4, 2025) (finding it reasonable to utilize a 100% violation rate for waiting time penalties where the complaint alleged a policy and practice of labor code violations and the calculation was limited to former employees); *Rubel v. U.S. Nursing Corp.*, No. 1:23-CV-1664 JLT CDB, 2025 WL 892816, at *18 (E.D. Cal. Mar. 24, 2025) (concluding a 100% violation rate is appropriate for waiting time penalties when the claim is derivative of other labor code violations asserted on behalf of a class, and any former employee need only suffer a single violation to be entitled to the penalty).

53.    Based on Plaintiff's allegations, it is reasonable to assume that 100% of the former, non-exempt employees during the relevant period are entitled to the maximum thirty days' wages.

54.    To calculate the value of Plaintiff's waiting time penalty claim for purposes of the amount in controversy, Defendant multiplied 30 full working days of average shift length of each eligible former employee by the corresponding most recent wage earned by every putative class member who separated from employment during the Relevant Period. (Kanthappan Decl. ¶23.) The amount in controversy for the waiting time penalty claim is therefore at least **$3,159,604.64.**

### (f)    Plaintiff's attorney fees could also be added to the amount in controversy.

55.    Plaintiff also seeks attorneys' fees on behalf of the putative class. (Pl.'s Compl. ¶¶ 4, 34, 45, 67, 85, 90, 97, at p. 19.) Attorneys' fees are properly included in the amount in controversy. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

(9th Cir. 2007) (holding that statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes).

56.   In wage and hour class actions, courts commonly use a 25% benchmark for attorneys' fees when analyzing the amount in controversy. *See Ortega v. Loyal Source Government Services LLC,* No. 3:20-cv-0879-LAB-NLS, 2022 WL 378426, at *4 (S.D. Cal. Feb. 7, 2022) (upholding 25% attorneys' fees request in wage and hour class action as "equal to the Ninth Circuit's benchmark rate" for class actions and "reasonable"); *see Felix v. WM. Bolthouse Farms, Inc.*, No. 1:19-cv-00312-AWI-JLT, 2020 WL 68577, at *22-23 (E.D. Cal. Jan. 7, 2020) (class counsel requested 33% of common fund); see also Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 794 (9th Cir. 2018) (future attorneys' fees must be included in the amount in controversy). Applying the 25% benchmark to the amount in controversy for all other claims is therefore reasonable.

57.   Here, the amount in controversy is easily established even without considering attorneys' fees. Defendant conservatively estimates the amount in controversy for Plaintiff's claims to be $14,082,163.70. (Kanthappan Decl. ¶24.) Adding 25% for attorneys' fees contributes an additional $3,520,540.93 to the amount in controversy, for a total of $17,602,704.63.

### 3.   Summary of Amount in Controversy

58.   As set forth above, the allegations in the Complaint satisfy the requisite $5 million for purposes of removal under CAFA:

| Damages | Amount |
| --- | --- |
| Unpaid Minimum Wage Claim | $4,383,468.02 |
| Alleged Meal Period Violations | $2,019,382.60 |
| Alleged Rest Period Violations | $2,145,558.44 |
| Alleged Wage Statement Violations | $2,374,150.00 |
| Alleged Waiting Time Penalties | $3,159,604.64 |

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

| Subtotal: $14,082,163.70[5] | |
|---|---|
| Attorneys' Fees (25%) | $3,520,540.93 |
| Total: $17,602,704.63 | |

68.     This amount is only for Plaintiff's alleged claims for unpaid minimum wage, meal period violations, rest period, violations, wage statement violations, waiting time penalties, and attorneys' fees. It does not include Plaintiff's claims for unpaid overtime, warehouse quota violations, and unfair business practices. Thus, even without considering every claim alleged Plaintiff's Complaint, Defendant was able to clearly establish that removal under CAFA is proper pursuant to 28 U.S.C. §1332(d). However, in the event Plaintiff challenges Defendant's Notice of Removal with a motion to remand to state court, Defendant reserves the right to present additional evidence relating to the remaining causes of action in support of its removal under CAFA.

### C.     **Any Class Member Is a Citizen of a Different State Than Any Defendant.**

59.     For purposes of establishing diversity under CAFA, this Court need only find that there is diversity between one putative class member and the named Defendant, Defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453(a).

### 1.     **Citizenship of Defendant**

60.     Defendant was at the time of the filing of this action, and still is, a corporation incorporated under the laws of Illinois. (Declaration of Paul Stanukinas ("Stanukinas Decl."), ¶¶3-6). Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The U.S. Supreme Court established the proper test for determining a corporation's principal place of business for purposes of

---

[5] (Kanthappan Decl. ¶24.)

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

diversity jurisdiction in *The Hertz Corporation v. Friend,* 559 U.S. 77 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 78. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

61.    Defendant's principal place of business and the location where its executive and senior management personnel coordinate its corporate activities is Lake Forest, Illinois. (Stanukinas Decl. ¶¶3-6).

62.    Therefore, at all material times, Defendant has been a citizen of Illinois.

63.    There are no other named Defendants in this action. Accordingly, there is no requirement for anyone else to join in this removal. The citizenship of fictitiously named "Doe" defendants is to be disregarded for the purposes of removal based on diversity jurisdiction. 28 U.S.C. § 1441(a).

**2.    Citizenship of Plaintiff and putative class members.**

64.    For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain or to which he or she intends to return. *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001).

65.    Plaintiff alleges that he is "a California resident and was employed by Defendants in Mira Loma, California as a non-exempt warehouse associate from approximately July 2024 to approximately August 2025." (Comp. ¶10). *Lew v. Moss, 797 F.2d 747, 750* (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Therefore, Plaintiff is a citizen of California.

66.    Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See*, *Lew* 797 F.2d at 750 ("place of employment" an important factor weighing in favor of

19

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

citizenship). Thus, even if Plaintiff was somehow not a citizen of California (despite his allegations) and was instead a citizen of Illinois (and there is no evidence that is the case), the hundreds of putative class members, all of whom worked in California (Comp. ¶19), are also citizens of California.

67. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met. Moreover, because Defendant is not a citizen of California, the exceptions to CAFA jurisdiction under 28 U.S.C. § 1332(d)(3) and (d)(4) are inapplicable.

## III. THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1446 ARE SATISFIED

68. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to the Declaration of George J Theofanis filed concurrently herewith.

69. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of California in Ventura County and with the Clerk of the Central District of California. True and correct copies of the Notice to the Plaintiff and the state court shall be filed promptly.

## IV. CONCLUSION

70. This Court, therefore, has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441.

71. In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have the opportunity to more fully brief the basis for this removal.

/ / /

/ / /

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

**WHEREFORE**, Defendant W.W. GRAINGER INC. removes the above action to this Court.

DATED: February 17, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Michael J. Nader
Michael J. Nader

Attorneys for Defendant
W.W. GRAINGER, Inc.

21